**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID C. KING, | ) | |
| | ) | CASE NO.   1:09-CV-0924 |
| Plaintiff, | ) | |
| | ) | JUDGE NUGENT |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| WADSWORTH CITY SCHOOLS, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | Docs. No. 4, 10 |

This case is before the magistrate judge on referral.  Before the court is the motion of defendants Medina County, the Ohio Court of Common Pleas Domestic Division ("the domestic court" or "Medina Domestic Court"), and Tim Anderson ("Anderson") (collectively, "the Medina County defendants") to dismiss the complaint against them pursuant to Fed. R. Civ. P. 12(b)(6).  Doc. no. 4.  Also before the court is the motion of defendant Wadsworth City Schools ("Wadsworth") for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Doc. no. 10.  Plaintiff, David C. King ("King"), does not oppose either motion. For the reasons given below, the motion of the Medina County defendants should be **GRANTED** in full, the motion of Wadsworth **GRANTED** in part and **DENIED** in part, and the remainder of the case remanded to state court.

I. Background

This court has original jurisdiction over this matter pursuant to 28 U.S.C §§ 1343(a)(3) and 1441(a), (b).

King alleges the following facts. The court views these facts, as it must, in the light most favorable to King.

King and his spouse, Laura J. Craig ("Craig"), divorced in 2002. The domestic relations court initially assigned custody of King and Craig's two minor children pursuant to a shared parenting plan. King, however, moved after to the filing of the divorce decree to terminate the shared parenting plan and to award him sole custody of the children. The court granted his motion as to terminating the shared parenting plan but awarded sole custody of the children to Craig. The court granted King companionship with the children pursuant to a standard parenting time schedule.

King alleges that defendants have interfered with the exercise of his parental rights with regard to his children's school activities. According to King, this included his participation in a school lunch program which gave parents an opportunity to eat lunch with their children at school. When Craig demanded that Wadsworth not allow King to participate in this activity, Wadsworth consulted with Anderson, a Court Investigator/Parenting Coordinator for Medina Domestic Court, to determine how it should respond. Anderson advised Wadsworth that King could not participate in school activities with his children unless Craig consented. Consequently, Wadsworth warned King not to participate in the lunch program, going so far as to cause the Wadsworth police department to threaten to arrest King for trespass if he appeared at his children's schools. King also alleges that he has been prevented from participating in other school activities by

2

Wadsworth's failure to respect his parental rights by keeping him informed of his children's activities.

On March 23, 2009, King filed a complaint in the Medina County Court of Common Pleas against Wadsworth and against the Medina Domestic Court; Anderson, in his official and individual capacities; and Medina County.  The complaint asserts eight causes of action.  Count I seeks declaratory judgment regarding rights allegedly protected by Ohio Rev. Code § 3109.051(H), (J) and is brought pursuant to Ohio Rev. Code § 2721.03. Count II asserts an action against all defendants for alleged interference with parental rights protected by the United States and Ohio constitutions.  Count III raises an action against all defendants for an alleged violation of parental rights protected by Ohio Rev. Code §§ 2111.08 and 3109.03.  Count IV requests that the court hold all defendants in contempt for alleged violations of parental rights protected by Ohio Rev. Code § 3109.051(H), (J).  Count V alleges liability against all defendants resulting from violations of Ohio Rev. Code § 2307.50.   Count VI asserts a common law cause of action against Wadsworth and Anderson for alleged defamation.  Count VII raises a common law cause of action against all defendants for alleged negligent and/or intentional infliction of emotional distress.  Count VIII alleges liability against all defendants for an alleged violation of parental rights protected by the United States Constitution and brought pursuant to 42 U.S.C. § 1983.  The complaint seeks declaratory judgment, monetary damages, penalties pursuant to contempt of court for violations of the court's custody order, attorney's fees, and costs.  On April 22, 2009, defendants removed the case to federal court on the basis of the court's original jurisdiction over the claim asserted pursuant to 28 U.S.C. § 1983.

Medina County, the Medina Domestic Court, and Anderson move for dismissal

3

pursuant to R. 12(b)(6).  Wadsworth moves for judgment on the pleadings pursuant to R. 12(c).  King does not oppose defendants' motions.

## II.  Standard of Review

The standards by which courts evaluate motions to dismiss pursuant to R. 12(b)(6) and motions for judgment on the pleadings pursuant to R. 12(c) are identical.  *Hughlett v. Romer-Sensky*, 497 F.3d 557, 561 (6th Cir. 2006).  To survive a motion to dismiss, a complaint must contain direct or inferential allegations with respect to all material elements required for recovery.  *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007). The court must accept plaintiffs' factual allegations as true.  *Id.*

The court need not, however, accept conclusions of law as true:

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic Corp. v.*] *Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant -unlawfully-harmed-me accusation.  *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.,* at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.,* at 570, 127 S. Ct. 1955.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.,* at 556, 127 S. Ct. 1955.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009).  According to the Sixth

4

Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."  Weisbarth*, 499 F.3d at 541 (quoting *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007)).  That is, "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief."  *Weisbarth*, 499 F.3d at 542.

III.  Jurisdiction

Defendants assert two arguments regarding this court's jurisdiction to hear this case. The court shall address these first.  These arguments in involve jurisdiction as to (1) all counts against Medina Domestic Court and Anderson in his official capacity and (2) Count I for declaratory judgment as to all defendants.

*A.*     *Jurisdiction as to Medina Domestic Court and Anderson*

The Medina Domestic Court and Tim Anderson assert that they may not be sued in this court.  These defendants are correct in part.

As defendants note, the Court of Common Pleas is a division of the State of Ohio. *Mumford v. Basinski*, 105 F.3d 264 (6th Cir. 1997).  Because Medina Domestic Court is a division of the State of Ohio and because the State of Ohio enjoys sovereign immunity from suit under the Eleventh Amendment, any cause of action seeking monetary damages against the State of Ohio must be brought in the Ohio Court of Claims:

> The state hereby waives its immunity from liability . . . and consents to be sued, and have its liability determined, in the court of claims created in this chapter . . . [F]iling a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, which the filing party has against any officer or employee . . . .

Ohio Rev. Code § 2743.02(A)(1).  No federal court may entertain a suit for damages

5

against a state, whether brought pursuant to state or federal law, unless the state has waived its immunity or Congress has explicitly overridden that immunity. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996); *Cardinal v. Metrish*, 564 F.3d 794, 799 (6th Cir. 2009); and *Freeman v. Michigan, Dep't of State,* 808 F.2d 1174, 1179-80 (6th Cir. 1987). There is no indication in the instant case that waiver or Congressional override applies.

Anderson in his official capacity enjoys the same immunity from suit as his employer, the Medina Domestic Court. *Everson v. Leis*, 556 F.3d 484, 493 n.3 (6th Cir. 2009). Thus, Anderson in his official capacity may also be sued for damages only in the Ohio Court of Claims.

While the State of Ohio and its divisions are absolutely immune from suits for damages whether brought pursuant to state or federal law, Anderson in his individual capacity is not so immune. Anderson may be sued in his individual capacity pursuant to Ohio law and may be found liable for monetary damages under some circumstances. *See discussion at Thompson v. Smith*, 178 Ohio App. 3d 656, 669-70899 N.E.2d 1040, 1050-51 (2006). Anderson may also be sued in his individual capacity pursuant to 42 U.S.C. § 1983 for alleged violations of rights protected by the United States Constitution. *Turker v. Ohio Dept. of Rehabilitation and Corrections*, 157 F.3d 453, 457 (6th Cir. 1998). Consequently, this court has jurisdiction to adjudicate state and federal claims against Anderson in his individual capacity.

Because Ohio and Anderson in his official capacity enjoy absolute immunity to suit in federal court and because Ohio law requires that they be sued for damages in the Ohio Court of Claims, this court is without jurisdiction to hear King's claims for damages against

6

the Medina Domestic Court or Anderson in his official capacity. *See Seminole Tribe*, 517 U.S. at 54. For this reason, Counts II through VIII against the Medina Domestic Court and Anderson in his official capacity should be dismissed without prejudice for lack of jurisdiction. This would leave Count I, a request for declaratory judgment, insofar as it would affect Medina Domestic Court and Anderson in his official capacity, and Counts II through VIII against Anderson in his individual capacity against these defendants.

B.      *Jurisdiction and declaratory judgment as to King's parental rights*

King's first cause of action asks for a declaratory judgment clarifying King's parental rights pursuant to Ohio law, a local rule of the domestic relations court, and the orders of the domestic relations court. Defendants contend that this cause of action lies outside this court's jurisdiction. Defendants also argue that King has failed to name all parties necessary to sustain this cause of action and that naming all necessary parties would itself deprive the court of jurisdiction.

Even if this court has jurisdiction to resolve this dispute insofar as it addresses parental rights, and this is by no means certain, it should decline to exercise that jurisdiction:

> One of the principal areas in which this Court has customarily declined to intervene is the realm of domestic relations. Long ago we observed that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593-594, 10 S.Ct. 850, 34 L.Ed. 500 (1890). See also *Mansell v. Mansell,* 490 U.S. 581, 587, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) ("[D]omestic relations are preeminently matters of state law"); *Moore v. Sims,* 442 U.S. 415, 435, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) ("Family relations are a traditional area of state concern"). So strong is our deference to state law in this area that we have recognized a "domestic relations exception" that "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). We have also acknowledged that it might be appropriate for the federal courts to decline to hear

7

a case involving "elements of the domestic relationship," *id.,* at 705, 112 S.Ct. 2206, even when divorce, alimony, or child custody is not strictly at issue:

"This would be so when a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.' Such might well be the case if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties." *Id.,* at 705-706, 112 S.Ct. 2206 (quoting *Colorado River,* 424 U.S., at 814, 96 S.Ct. 1236).

Thus, while rare instances arise in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue, see, *e.g., Palmore v. Sidoti,* 466 U.S. 429, 432-434, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984), in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts.

*Elk Grove Unifeid Sch. Dist. v. Newdow*, 542 U.S. 1 (2004).

King asks this court to settle his rights as a father under Ohio domestic relations law and under the order of the domestic relations court. There is no substantial federal question involved in this issue, nor does this issue exist apart from family law. Consequently, it is inappropriate for a federal court to adjudicate this matter.

Moreover, even if this court were otherwise inclined to exercise jurisdiction over Count I, King has failed to name all parties necessary to sustaining this cause of action, and joining the necessary parties would deprive this court of jurisdiction. King brings this cause of action pursuant to Ohio Rev. Code § 2721.03, providing a cause of action for declaratory judgment. Ohio Rev. Code § 2721.12(A) requires that "when declaratory relief is sought under this chapter in an action or proceeding, all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding." Undoubtedly, Craig, as the custodial parent, is a person having an interest in any declaration of King's parental rights. But if Craig were joined as a necessary party, then this court would have no jurisdiction to adjudicate Count I. Any declaration of King's

8

parental rights under Count I would inevitably affect Craig's custody and care of King's and Craig's minor children.  Under Ohio law, the court in which a decree of divorce was originally rendered retains continuing jurisdiction over matters relating to the custody and care of the minor children of the parties to the divorce.  *Loetz v. Loetz*, 62 Ohio St. 2d 1, 1, 406 N.E.2d 1093, 1093 (1980).  Thus, without the joinder of Craig, this court cannot consider Count I for failure to join a necessary party; with the joinder of Craig, this court is without jurisdiction to adjudicate Count I.

For the reasons given above, Count I should be dismissed as to all defendants without prejudice.  This, coupled with the jurisdictional discussion in the previous sub-section, would result in the dismissal of all claims affecting Medina Domestic Court and Anderson in his official capacity.  It does not resolve Counts II through VIII against Medina County, Wadsworth, or Anderson in his individual capacity.

### IV.  Claims against Medina County

Counts II through VIII against Medina County are premised entirely upon King's assertion that Medina County "has fiscal oversight and responsibility for the Medina County, Ohio Domestic Relations Court."  Complaint at 2.  Medina County responds that King fails to state a claim against it.

As the Medina County defendants point out, the Medina Domestic Court is a division of the state of Ohio, not of Medina County.  *Mumford v. Basinski*, 105 F.3d 264 (6th Cir. 1997); *Triplett v. Connor*, 109 Fed. Appx. 94 (6th Cir. 2004).  At the very least, this renders facially implausible any claim that Medina County can be held liable for the acts of the Medina Domestic Court or the actions of its employees.  Absent additional, more concrete allegations which would render King's claim against Medina County plausible, all claims

9

against Medina County should be dismissed with prejudice for the reason that King has failed to state a claim for which relief may be granted under the standard described in *Twombly* and *Iqbal*.

### V.  Claims against Wadsworth

The court will address each of King's remaining causes of action, Counts II through VIII, against Wadsworth with respect to Wadsworth's motion for judgment on the pleadings.

*A.    Alleged interference with constitutionally-protected parental rights*

King alleges in Count II that defendants interfered with his parental rights under the Ohio Constitution, Art. I, §§ 1, 2, and 16, and under the Fourth Amendment to the United States Constitution.  Wadsworth seeks judgment as to King's federal claim but not as to King's state law claim.

As respondent indicates, the Fourth Amendment to the Constitution does not protect parental rights so denominated.  That amendment reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Parental rights are protected under the federal constitution pursuant to the Fourteenth Amendment to the Constitution, not the Fourth Amendment.  *See Santosky v. Kramer*, 455 U.S. 745 (1982);  *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978); *Smith v. Organization of Foster Families*, 431 U.S. 816, 845 (1977); *Moore v. East Cleveland*, 431 U.S. 494, 499 (1977) (plurality opinion); *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 639-640 (1974); *Stanley v. Illinois*, 405 U.S. 645, 651-652 (1972); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-535 (1925); *Meyer*

*v. Nebraska*, 262 U.S. 390, 399 (1923).  Consequently, King's assertion that Wadsworth interfered with his parental rights as guaranteed under the Fourth Amendment to the Constitution fails to state a claim upon which relief may be granted.[1]  For this reason, judgment should be entered against in favor of Wadsworth as regards the federal component of Count II.

B.     *Alleged interference with parental rights as provided by Ohio Rev Code §§ 2111.08 and 3109.03*

King contends in Count III that Wadsworth interfered with his parental rights as provided in Ohio Rev Code §§ 2111.08 and 3109.03.  Wadsworth denies that King may bring a civil action to enforce rights protected by these statutes against Wadsworth.

Ohio Rev Code § 2111.08 provides in its entirety as follows:

> The wife and husband are the joint natural guardians of their minor children and are equally charged with their care, nurture, welfare, and education and the care and management of their estates.  The wife and husband have equal powers, rights, and duties and neither parent has any right paramount to the right of the other concerning the parental rights and responsibilities for the care of the minor or the right to be the residential parent and legal custodian of the minor, the control of the services or the earnings of such minor, or any other matter affecting the minor; provided that if either parent, to the exclusion of the other, is maintaining and supporting the child, that parent shall have the paramount right to control the services and earnings of the child.  Neither parent shall forcibly take a child from the guardianship of the parent who is the residential parent and legal custodian of the child.

> If the wife and husband live apart, the court may award the guardianship of a minor to either parent, and the state in which the parent who is the residential parent and legal custodian or who otherwise has the lawful custody of the minor resides has jurisdiction to determine questions concerning the minor's guardianship.

Ohio Rev. Code § 3109.03 provides in its entirety as follows:

---

[1]  Moreover, even if King's complaint were liberally construed so as to state a claimed violation of rights protected by the Fourteenth Amendment, King alleges no facts that would support a plausible claim alleging such a violation.

> When husband and wife are living separate and apart from each other, or are divorced, and the question as to the parental rights and responsibilities for the care of their children and the place of residence and legal custodian of their children is brought before a court of competent jurisdiction, they shall stand upon an equality as to the parental rights and responsibilities for the care of their children and the place of residence and legal custodian of their children, so far as parenthood is involved.

Both statutes are guides to Ohio domestic relations courts in adjudicating parental rights and responsibilities.  Neither statute has any apparent application to Wadsworth, nor does either section give a plaintiff a right to bring a civil suit to enforce any rights guaranteed by the section.  King cites no other enabling statute which would give him a right to bring a civil action to enforce any rights protected by these statutes.

Because King cites no law authorizing him to bring a civil suit to enforce any rights protected by Ohio Rev Code §§ 2111.08 or 3109.03 against Wadsworth, judgment should be entered in favor of Wadsworth as to Count III.

C.     *Contempt of court for alleged violations of Ohio Rev. Code § 3109.051(H) and (J)*

King asserts in Count IV that Wadsworth should be held in contempt of court for violations of Ohio Rev.. Code § 3109.051(H) and (J).  Wadsworth argues that this matter is for the Medina Domestic Court to decide.

Even if Ohio Rev. Code § 3109.051(H) and (J)  authorized a court to issue a citation for contempt given the circumstances of the instant case, this court would not be the court in which to seek such a citation.  As it happens, however, neither statute authorizes a contempt citation under the facts of this case.

Both Ohio Rev. Code § 3109.051(H) and (J) permit courts to find persons in contempt for violating court orders establishing parental rights.  As King has not alleged any violation of a court order, these provisions do not apply in this case.  Ohio Rev. Code §

12

3109.051(H)(2) also provides in relevant part, "Any keeper of any record who knowingly fails to comply with division (H) of this section . . . is in contempt of court."  However, that provision is effective only "subsequent to the issuance of an order under division (H)(1) of this section . . . ."  Ohio Rev. Code § 3109.051(H)(2).  Again, King has not alleged the issuance of any relevant court order that would trigger the contempt provision in Ohio Rev. Code § 3109.051(H)(2).

The only remaining plausible authority for finding Wadsworth in contempt would lie in the inherent powers of the court:

> The inherent powers of federal courts are those which "are necessary to the exercise of all others."  *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812).  The most prominent of these is the contempt sanction, "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court . . . ."  *Cooke v. United States*, 267 U.S. 517, 539, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925); see 4 W. Blackstone, Commentaries *282-*285.

*Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980).  Such powers, however, are reserved to enforce a court's *own* orders, not the orders of other courts.  This court knows of no authority permitting one court to hold a party in contempt for violating the orders of another court.

If the Medina Domestic Court has issued an order that Wadsworth has violated, King must seek a citation for contempt in that court for relief.[2]  There is no authority in the Ohio statutes or in the inherent powers of this court for this court to issue a contempt citation against Wadsworth under the circumstances of this case.  For these reasons, judgment

---

[2]  This case was removed from the Medina County Court of Common Pleas, not the Medina Domestic Court.  Thus, even before removal, King was not in the proper court to seek a citation for contempt.

13

should be entered in favor of Wadsworth as to Count IV.

D.      *Alleged violations of Ohio Rev. Code § 2307.50*

Count V alleges that by keeping his children from him, Wadsworth violated Ohio

Rev. Code § 2307.50.  Ohio Rev. Code § 2307.50 provides in relevant part as follows:

> (A) As used in this section:
>
> (1) "Child stealing crime" means a violation of sections 2905.01, 2905.02, 2905.03, and 2919.23 of the Revised Code or section 2905.04 of the Revised Code as it existed prior to the effective date of this amendment. . . .
>
> (B) . . . [I]f a minor is the victim of a child stealing crime and if, as a result of that crime, the minor's parents, parent who is the residential parent and legal custodian, parent who is not the residential parent and legal custodian, guardian, or other custodian is deprived of a parental or guardianship interest in the minor, the . . . parent who is not the residential parent and legal custodian, guardian, or other custodian may maintain a civil action against the offender to recover damages for interference with the parental or guardianship interest. . . .

Ohio Rev. Code §§ 2905.01, 2905.02, 2905.03, and 2919.23 concern kidnaping, abduction,

unlawful restraint, and interference with custody, respectively.  Ohio Rev. Code § 2905.04

is not applicable because it refers only to crimes committed before 1995.

Of the child-stealing crimes listed in Ohio Rev. Code § 2307.50(A), only Ohio Rev.

Code § 2919.23 is arguably applicable to the facts of the instant case.  That section

provides in relevant part as follows:  "(A) No person, knowing the person is without privilege

to do so or being reckless in that regard, shall entice, take, keep, or harbor a . . . (1) . . .

child under the age of eighteen . . . ."  In the Ohio Criminal Code,

> [a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature.  A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

Ohio Rev. Code § 2901.22(C).

14

The facts pleaded by King contradict a violation of Ohio Rev. Code § 2307.50(A). First, it cannot be said that Wadsworth lacked any privilege to keep or harbor King's children, as they were enrolled in Wadsworth's schools.  Second, King alleges that before Wadsworth kept him from participating in the school lunch program, Wadsworth received an instruction from the custodial parent not to allow King to participate in the program and consulted with a representative of the Medina Domestic Court to determine whether that instruction should be followed.  No reasonable person could find that Wadsworth acted with "heedless indifference to the consequences" in so acting.

King's fifth cause of action fails to plead a plausible violation of Ohio Rev. Code § 2307.50.  Consequently, judgment should be entered in favor of Wadsworth as to King's fifth cause of action.

*E.*      *Alleged defamation*

Count VI alleges defamation against Wadsworth.  Wadsworth is immune from this cause of action.  Ohio law generally bars civil liability for damages for political subdivisions such as Wadsworth.  Ohio Rev. Code  § 2744.02(A)(1).  There are five exceptions to this rule. specified at Ohio Rev. Code § 2744.02(B).  Of these, only one arguably applies to the facts of the instant case:

> (2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.[3]

---

[3] The other exceptions are loss due to a municipal employee's operation of a motor vehicle, loss due to negligent failure to keep roads and bridges in repair and free from obstructions, loss due to employee negligence and caused by physical defects on grounds used in the performance of a governmental function, and loss when civil liability is expressly imposed on a subdivision by the Ohio Revised Code.

15

However, Ohio Rev. Code § 2744.01(C)(1)(c) expressly declares that providing a system of public education is a governmental function, not a proprietary function.  Thus, the exception does not apply, and Wadsworth cannot be held civilly liable to King.

Because Ohio law generally bars civil liability for damages against Wadsworth and no exception applies, Wadsworth is immune to King's action for defamation.  Consequently, judgment should be entered in favor of Wadsworth as to King's sixth cause of action.

F.    *Alleged intentional or negligent infliction of emotional distress*

Count VII alleges intentional and/or negligent infliction of emotional distress against Wadsworth.  Political subdivisions in Ohio are absolutely immune from damages for intentional torts.  *Wilson v. Stark Cty. Dept. of Human Servs.*, 70 Ohio St. d 450, 452, 639 N.E.2d 105 (1994).  In addition, for the same reasons that King is unable to maintain a cause of action for defamation against Wadsworth, it is also unable to maintain a cause of action for negligent infliction of emotional distress against Wadsworth.  For these reasons, judgment should be entered in favor of Wadsworth as to Count VII.

G.    *Alleged constitutional violation brought pursuant to 42 U.S.C. § 1983*

Count VIII alleges that Wadsworth's actions violated King's parental rights protected by the United States Constitution.  King brings this allegation pursuant to 42 U.S.C. § 1983.

King's claim against Wadsworth cannot be based solely on any employee's conduct, as respondeat superior is not available as a theory of recovery under § 1983.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  Rather, King must show that Wadsworth itself is the wrongdoer.  *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992); *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996).  Political subdivisions can be held liable only where a plaintiff can establish that "an officially executed policy, or the

16

toleration of a custom" within the subdivision causes the deprivation of a constitutionally protected right.  *Doe*, 103 F.3d at 507, citing *Monell*, 436 U.S. at 690-91.  A "custom" for these purposes must "be so permanent and well settled as to constitute a custom or usage with the force of law."  *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036 (internal quotation marks and citation omitted); *see also Doe*, 103 F.3d at 507.  "Law," in turn, must include "[d]eeply embedded traditional ways of carrying out state policy."  *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940); *Doe*, 103 F.3d at 507-08.  "It must reflect a course of action deliberately chosen from among various alternatives."  *Doe*, 103 F.3d at 508, citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985).

King does not allege that any policy or custom of Wadsworth caused the alleged deprivation.  Consequently, he has failed to plead a proper cause of action against Wadsworth pursuant to 42 U.S.C. § 1983.  For this reason, judgment should be entered in favor of Wadsworth as to King's eighth cause of action.

## VI.  Claims against Anderson in His Individual Capacity

Although this court is without jurisdiction to hear King's claims against Anderson in his official capacity, King's claims against Anderson in his individual capacity remain.[4]

A.    *Alleged interference with constitutionally-protected parental rights*

King alleges in Count II that Anderson interfered with his parental rights under the Ohio Constitution, Art. I, §§ 1, 2, and 16, and under the Fourth Amendment to the United

---

[4]  The following discussion does not examine the conditional immunity enjoyed by Anderson in his individual capacity as a state employee, as discussed in *Thompson*, 178 Ohio App. 3d at 669-70, 899 N.E.2d at 1050-51.  As described *infra*, King fails to state a plausible claim against Anderson in his official capacity even if Anderson enjoyed no immunity whatsoever.  Consequently, the issue of conditional immunity for Anderson does not arise in the instant case.

17

States Constitution.  As already noted, the Fourth Amendment to the United States Constitution does not protect parental rights.  Consequently, King's assertion that Anderson interfered with his parental rights as guaranteed under the Fourth Amendment to the Constitution fails to state a cause of action upon which relief may be granted.

King's allegation that Anderson interfered with parental rights protected by the Ohio Constitution, Art. I, §§ 1, 2, and 16 is flawed:  Only Art. I, § 16 protects parental rights.  *In re Hockstok v. Hockstok*, 98 Ohio St. 3d 238, 241, 781 N.E.2d 971, 975 (2002).  Thus, claims based on rights supposedly protected by Art. I, §§ 1 and 2 fail to state a claim upon which relief may be granted.

The protection afforded to parental rights in Art. I, § 16 of the Ohio Constitution is a guarantee of due process.  That is, "[s]ince parents have constitutional custodial rights, any action by the state that affects this parental right, such as granting custody of a child to a nonparent, must be conducted pursuant to procedures that are fundamentally fair."  *Id.*; *see also In re Shaeffer Children*, 85 Ohio App. 3d 683, 621 N.E.2d 426, 430 (1993).

King has not pleaded a due process violation:  He has made no allegations whatsoever regarding the process or lack of process in the procedures by which he was allegedly deprived of his right to have lunch with his child at school.  Consequently, King has failed to make a short, plain statement of the claim showing that he is entitled to relief or sufficient factual matter to state a claim to relief that is plausible on its face.  For this reason, Count II against Anderson in his individual capacity should be dismissed with prejudice.

B.      *Alleged interference with parental rights as provided for by Ohio Rev Code §§ 2111.08 and 3109.03*

18

King contends in Count III that Anderson interfered with his parental rights as provided in Ohio Rev Code §§ 2111.08 and 3109.03.  As already discussed, neither statute gives a plaintiff a right to bring a civil suit to enforce any rights guaranteed by either section.  King cites no other enabling statute which would give him a right to bring a civil action to enforce any rights protected by these statutes.  For this reason, For this reason, Count III against Anderson in his individual capacity should be dismissed with prejudice.

C.     *Contempt of court for alleged violations of Ohio Rev. Code § 3109.051(H) and (J)*

King asserts in Count IV that Anderson should be held in contempt of court for violations of Ohio Rev.. Code § 3109.051(H) and (J).  It has already been shown that this court has no authority to hold anyone in contempt of court for alleged violations of another court's orders.  For this reason, Count IV against Anderson in his individual capacity should be dismissed with prejudice.

D.     *Alleged violations of Ohio Rev. Code § 2307.50*

Count V alleges that by keeping his children from him,  Anderson violated Ohio Rev. Code § 2307.50.  As has already been shown, the facts pleaded by King contradict a predicate "child stealing crime" required for liability pursuant to Ohio Rev. Code § 2307.50.  For this reason, Count V against Anderson in his individual capacity should be dismissed with prejudice.

E.     *Alleged defamation*

Count VI alleges defamation against Anderson.  A cause of action for defamation in Ohio has four elements:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

19

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."

*Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.*, 81 Ohio App. 3d 591, 601, 611 N.E.2d 955, 962 (1992) (quoting 3 Restatement of the Law 2d, Torts, § 558 (1977)).

King alleges no facts against Anderson regarding publication of any allegedly false and defamatory statement to a third party.  For this reason, Count VI against Anderson in his individual capacity should be dismissed with prejudice.

F.      *Alleged intentional or negligent infliction of emotional distress*

Count VII alleges intentional or negligent infliction of emotional distress against Anderson.

A cause of action for intentional infliction of emotional distress in Ohio requires a plaintiff to prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgmt., Inc.*, 71 Ohio St. 3d 408, 410, 644 N.E.2d 286, 289 (1994). Defendant intended the distress if the defendant "knew or should have known that actions taken would result in serious emotional distress to the plaintiff . . . ."  *Carlton v. Davisson*, 104 Ohio App.3d 636, 653, 662 N.E.2d 1112, 1123 (1995).  Defendant's conduct must be "so extreme and outrageous as to go 'beyond all possible bounds of decency'" and "be considered as 'utterly intolerable in a civilized community . . . ."  *Id.*  The distress experienced by plaintiff must be serious and of a nature that no reasonable person could be expected to endure it.  *Id.*

20

King does not remotely plead sufficient facts regarding Anderson to sustain a cause of action for intentional infliction of emotional distress.  The conduct which King alleges of Anderson, advising Wadsworth that the court's visitation schedule precluded King's participation in the lunch program against Craig's wishes, cannot possibly be described as so extreme and outrageous as to go beyond all possible bounds of decency and be utterly intolerable in a civilized community.  Moreover, King has not alleged that Anderson's conduct caused King to suffer any distress.  Consequently, King has failed to plead a case plausible on its face against Anderson for intentional infliction of emotional distress.

A cause of action in Ohio for the negligent infliction of emotional distress may be stated where (1) the plaintiff was a bystander;  (2) the plaintiff reasonably appreciated the peril which took place, whether or not the victim suffered actual physical harm, and (3) the plaintiff suffered serious emotional distress as a result of this cognizance or fear of peril.  *Paugh v. Hanks*, 6 Ohio St. 3d 72, 80, 451 N.E.2d 759, 766-767 (1983).  None of the facts required by the first two elements of the tort have been pleaded against Anderson.

For this reason, Count VII against Anderson in his individual capacity should be dismissed with prejudice.

G.    *Alleged constitutional violation brought pursuant to 42 U.S.C. § 1983*

Count VIII alleges that Anderson's actions violated King's parental rights protected by the United States Constitution.  King brings this allegation pursuant to 42 U.S.C. § 1983.

To establish a cause of action under 42 U.S.C. § 1983, the plaintiff must establish that: (1) the defendant deprived the decedent of a right secured by the Constitution or laws of the United States; (2) the defendants caused such a deprivation while acting under color of state law, and (3) the deprivation occurred without due process of law. *See, e.g., O'Brien*

21

*v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994).

King has failed to allege that Anderson was acting under color of state law or that any deprivation occurred without due process.  Moreover, King had available to him process for adjudicating the alleged wrongs he suffered:  Returning to the Medina Domestic Court, which still had jurisdiction over matters related to the custody and care of his minor children.  Instead of availing himself of this avenue for relief, King filed this complaint in the Medina County Court of Common Pleas.  Having failed to avail himself of the proper process for curing his alleged wrongs, King should not now be heard to say that he was denied due process.

King has both failed to plead properly a violation of 42 U.S.C. § 1983 and has failed to avail himself of the proper process for adjudicating his claims.  For these reasons, Count VIII against Anderson in his individual capacity should be dismissed with prejudice.

## VII.  Conclusion

For the foregoing reasons, (1) Counts I through VIII against the Medina Domestic Court and Anderson in his official capacity should be dismissed without prejudice because this court is without jurisdiction to hear those claims; (2) Count I, for declaratory judgment, should be dismissed without prejudice as to all defendants either because this court lacks jurisdiction to hear that claim or because this court should refuse to exercise its jurisdiction; (3) Counts II through VIII against Medina County should be dismissed with prejudice pursuant to R. 12(b)(6); (4) judgment should be entered pursuant to R. 12(c) in favor of Wadsworth as to Counts II through VIII, with the exception of that portion of Count II alleging interference with King's parental rights as protected by the Ohio Constitution; and (5) Counts II through VIII against Anderson in his individual capacity should be dismissed

22

with prejudice pursuant to R. 12(b)(6). Thus, the motion of the Medina County defendants should be **GRANTED** in full, and the motion of Wadsworth **GRANTED** in part and **DENIED** in part.

The only remaining claim in this case is Count II against Wadsworth insofar as it alleges interference with King's parental rights as protected by the Ohio Constitution. As this case no longer includes a federal cause of action, the case should be remanded to the Medina Court of Common Pleas for further proceedings.


Date: October 15, 2009                                  /s/ Nancy A. Vecchiarelli
                                                        United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**